[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 14 2000
THOMAS K. KAHN
CLERK

————————————————

No. 99-4098
Non-Argument Calendar

————————————————

D. C. Docket No. 98-00417-CR-SH

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

LEODON RODRIGUEZ,

Defendant-Appellant.

————————————————

Appeal from the United States District Court
for the Southern District of Florida

————————————————
**(July 14, 2000)**

Before COX, WILSON and RONEY, Circuit Judges.

PER CURIAM:

Defendant Leodon Rodriguez appeals his conviction under the Hobbs Act, 18

U.S.C. § 1951(a), for committing six motel robberies. Two elements are essential for

a Hobbs Act prosecution: robbery and an effect on commerce. See 18 U.S.C. § 1951(a). This appeal focuses on the effect-on-commerce element. Rodriguez alleges that the evidence did not prove the robberies had the requisite effect on interstate commerce required under the Act, and that the district court erred in admitting testimony of the motel clerks regarding the registering of out-of-state guests to show this element. We affirm.

Between February 6 and February 28, 1998, Rodriguez and a co-defendant not a party to this appeal robbed five Miami/Dade County motels, one of them twice, for a total of $2,090 by holding up the motels' front desk clerks at gunpoint. A jury convicted Rodriguez of one count of conspiracy to obstruct commerce in violation of 18 U.S.C. § 1951(a); five counts of obstructing commerce by robbery, in violation of 18 U.S.C. § 1951(a); and six counts of carrying a firearm during and in relation to the robberies, 18 U.S.C. § 924(c). Defendant was sentenced to a total of 1,381 months in prison. On this appeal, defendant challenges only his convictions for the Hobbs Act violations.

I.    Insufficiency of the evidence to prove interstate commerce

We review the sufficiency of the evidence to support Rodriguez's conviction de novo, viewing the evidence in the light most favorable to the Government and drawing all reasonable inferences and credibility choices in favor of the jury's verdict. *See United States v. Guerra*, 164 F.3d 1358, 1359 (11th Cir.1999). The district court's denial of the motions for a judgment of acquittal will be upheld if a reasonable trier of fact could conclude that the evidence establishes the defendant's guilt beyond a reasonable doubt. *See United States v. Castleberry,* 116 F.3d 1384, 1388 (11th Cir.1997).

The Hobbs Act literally prohibits any act that "in any way or degree obstructs, delays, or affects commerce ...by robbery or extortion...." 18 U.S.C. § 1951(a). The Supreme Court has made it clear that the Hobbs Act's broad jurisdictional language is to be read as meaning what it says: "[The] Act speaks in broad language, manifesting a purpose to use all the constitutional power Congress has to punish interference with interstate commerce by extortion, robbery or physical violence. The Act outlaws such interference 'in any way or degree.'" *Stirone v. United States*, 361 U.S. 212, 215 (1960). The government needs only to establish a minimal effect on interstate commerce to support a violation of the Hobbs Act. *See United States v. Guerra,* 164 F.3d 1358, 1360 (11th Cir. 1999); *United States v. Castleberry,* 116 F.3d

3

1384, 1387 (11th Cir. 1997). A mere "depletion of assets" of a business engaged in interstate commerce will meet the requirement. *See United States v. Guerra*, 164 F.3d 1358, 1360 (11th Cir. 1999).

This is the evidence offered to establish that the motel was part of interstate commerce. The motel desk clerks testified that they personally had registered guests from out-of-state at some point. All but one motel desk clerk testified that they had registered guests from outside the country. An FBI agent testified that his review of the guest registration cards at two of the motels indicated there were out-of-state guests. Three of the motels had available in their lobbies brochures, fliers and other advertisements for tourist attractions in the local area and other parts of Florida.

Rather than citing cases where the evidence was held to be insufficient, defendant compares this relatively sparse amount of evidence to the evidence held sufficient in four other cases: *United States v. Castleberry,*116 F.3d 1384(11th Cir. 1997); *United States v. Kaplan,* 171 F.3d 1351 (11th Cir.), *cert. denied,* _U.S. _, 120 S.Ct. 323 (1999); *United States v. Guerra,* 164 F.3d 1358(11th Cir. 1999); and *United States v. Paredes*, 139 F.3d 840 (11th Cir. 1998). These cases do not require a reversal in this case.

First, such a comparison overlooks the factual distinctions in these cases which require different types of proof. Both *Castleberry* and *Kaplan* involve extortion

4

schemes where the effect on interstate commerce was not readily apparent. In *Castleberry,* the defendant took money from his clients who were charged with Driving Under the Influence (DUI), and paid money to the prosecutor to "dispose" of their cases. The government introduced evidence regarding the effect on commerce of non- prosecuted DUI cases as well as evidence regarding the flow in commerce of fines paid in such cases. At issue in *Kaplan* was an extortion scheme involving the defendant and a Panamanian lawyer. In that case, the government introduced evidence of foreign travel and interstate phone calls. Unlike *Castleberry* and *Kaplan*, the interstate commerce connection in this case is straightforward, involving the robbery of a commercial establishment engaged in interstate commerce.

*United States v. Guerra,* 164 F.3d 1358(11th Cir. 1999) and *United States v. Paredes,* 164 F.3d 840 (11th Cir. 1998) involved cash robberies of establishments that sell products in interstate commerce. In both cases, the Court held that the government's evidence that the establishments sold goods manufactured from out of state was sufficient to establish the necessary interstate nexus. *See Guerra*, 164 F.3d at 1361($300 from service station that was part of a nationwide network of gas stations and primarily sold fuel products drawn from outside the state; forced to close for more than two hours during police investigation and lost business over next several days); *Paredes,* 139 F.3d at 844(Less than $170 in cash from two local

convenient stores not connected to out-of-state stores; small amount of stores' merchandise manufactured outside of the state). These cases differ from this case. The proof of interstate commerce in this case is established by the traveling guests of the motels rather than interstate sales of products.

Second, in determining whether there is a minimal effect on commerce, each case must be decided on its own facts. Rodriguez correctly states that government did not present evidence here that the motels closed operations or turned away customers as in *Guerra*. *See Guerra*, 164 F.3d at 1361("The service station here lost more than just the money the store clerk handed over to Guerra; it was forced to close for more than two hours while police investigated the robbery, and it lost business over the next several days."). While such evidence obviously would have strengthened the government's case, it is not required to satisfy § 1951(a). Nor does defendant's evidence that these establishments do not require reservations; that they do not belong to a national chain; or that the majority of their business is from clientele that register at the hotel on a one-day basis rather than for an extended stay alter the determination. Evidence that these establishments have at some point registered guests from out-of state is sufficient to establish their connection to interstate commerce. See *United States v. Pearson*, 508 F.2d 595 (5th Cir. 1978)(Court held that government's evidence of 1,000 guest registration cards from

a large Miami beach hotel sufficient to establish the requisite nexus to interstate commerce). The government offered evidence that the defendant took $2,090 from the motels, thereby depleting the assets of these establishments that operate in interstate commerce.

No cases have been cited or found in which the robbery of motels such as these were held not to involve interstate commerce. The district court correctly held there to be sufficient evidence in the record to support the jury's finding that defendant's robberies had at least a minimal effect on interstate commerce.

II.      Hearsay Argument

As to the evidence relied upon in the sufficiency evaluation, defendant argues that the testimony from the motel employees that motel guests were from outside of Florida was inadmissible hearsay. He contends for the first time on appeal, that the admission of this evidence violated the Sixth Amendment's Confrontation Clause. The district court admitted the testimony pursuant to the catch-all exception to the hearsay rule, Federal Rule of Evidence 807, which permits admission of hearsay if it is particularly trustworthy; it bears on a material fact; it is the most probative evidence addressing that fact; its admission is consistent with the rules of evidence and advances the interests of justice; and its proffer follows adequate notice to the adverse

party.[1] Defendant's challenge focuses on the first element: whether the motel clerks' statements have the appropriate "guarantees of trustworthiness." Fed.R.Evid. 807. The district court did not err in determining that the testimony met this requirement. All of the motel employees testified that they registered out-of-state or foreign guests. Employees of four of the motels, Villa Cortez Motel, Las Palmas, Cheo's Motel and Sunnyside Motel, all testified that their statements were based on their review of documents such as a driver's license or passport that indicated the guest was from out of state. Although the motel employee for Miami Executive Hotel did not so testify, an FBI agent testified that his review of guest registration cards at the hotel indicated there were guests registered from out of state. "The district court has considerable discretion in determining admissibility under [former] Rule 804(b)(5)." *See United States v. Munoz,* 16 F.3d 1116,1122 (11th Cir. 1994)(In 1997, the contents of Federal Rules of Evidence 803(24) and 804(b)(5) were combined and transferred to the new

---

[1] Fed.R.Evid. 807:

A statement not specifically covered by Rule 803 or 804 but having equivalent circumstantial guarantees of trustworthiness, is not exclude by the hearsay rule, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (c) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, the proponent's intention to offer the statement and the particulars of it, including the name and address of the declarant.

Rule 807.)  Under the circumstances of this case, the court  did not abuse that discretion.  Nor was there plain error in evaluating defendant's Confrontation Clause claim.  *See Idaho v. Wright*, 497 U.S. 805, 813-21(1990)(indicating that under the Confrontation Clause, as under the hearsay rules, courts must evaluate the totality of the circumstances to determine whether a statement contains particular guarantees of trustworthiness that make the declaration especially worthy of belief).

The district court's decision to admit the statements was proper under both Rule 807 and the Confrontation Clause.

AFFIRMED.